**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**PLUMBERS & PIPEFITTERS LOCAL**
**UNION NO. 295, et al.,**

        **Plaintiffs,**

**-vs-**                                **Case No. 6:05-cv-212-Orl-22DAB**

**G & W PLUMBING CO., INC.,**

        **Defendant.**
_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

    This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION (Doc. No. 29)**
>
> **FILED:**    **January 6, 2006**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

    Plaintiffs move for a temporary restraining order and permanent injunction; specifically seeking " to enjoin Defendant from violating the terms of its collective bargaining agreements and the Trust Agreement of Plaintiffs by requiring Defendant to submit contributions for January 2005 through and including June 2005." (Doc. No. 30). More specifically, Plaintiffs pray that "a temporary restraining order should issue requiring Defendant to do the following: **1.** Permit Plaintiffs' certified public accountant to conduct an immediate audit of its books for the time period of January 2005 –

June 2005. **2.** After the amount of contributions due and owing is determined, remit forthwith to Plaintiffs all reports and contributions for covered hours worked during the time period of January – June 2005. **3.** Cease and desist from the distributions of any and all bonuses to any G & W employee, officer, shareholder, or director until such time as G & W has paid Plaintiffs in full for the contributions due and owing." For the reasons set forth herein, the motion must be **denied.**

## *BACKGROUND*

In their motion, Plaintiffs state that they "have filed a Complaint in this Court seeking delinquent employer contributions, liquidated damages, dues, injunctive relief, interest, costs, and fees pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq., and the Labor-Management Relations Act, 29 U.S.C. §141 et seq." A review of the Complaint, however, reveals that Plaintiffs have *not* filed a Complaint seeking injunctive relief, but rather, Plaintiffs filed a two count action seeking damages, plus prejudgment contractual interest and statutory penalties, costs and a reasonable attorney's fee (Count I); and an audit, and damages, plus prejudgment interest and statutory penalties, plus costs and a reasonable attorney's fee (Count II). With the exception of the request to forbid G&W from paying any bonuses until all sums due Plaintiffs are paid, Plaintiffs seek to obtain the complete relief they seek in the complaint via the instant motion.

## *STANDARDS OF LAW*

As recognized by both sides in their papers, pursuant to Federal Rule of Civil Procedure 65(a), a court may issue a preliminary injunction if four requirements are met:

> (1) a substantial likelihood that the movant will prevail on the underlying merits of the case, (2) a substantial threat that the moving party will suffer irreparable damage if the relief is denied, (3) a finding that the threatened injury to the movant outweighs the

>harm the injunction may cause defendant, and (4) a finding illustrating the extent to which granting the preliminary injunction will not disserve the public interest.

*See Lucero v. Operation Rescue*, 954 F.2d 624 (11th Cir. 1992).

### *ANALYSIS*

**The Authority of the District Court**

The Court initially notes that the relief sought includes not only the relief sought in the Complaint (damages and an accounting), but an Order directed toward preventing Defendants from dissipating assets (money) which could otherwise be used to pay any eventual judgment. In *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 119 S.Ct. 1961, 144 L.Ed2d 319 (1999), the Supreme Court held that a District Court lacks authority in an action for money damages to issue a preliminary injunction preventing a note issuer from disposing of assets in which the note holders claimed no lien or equitable interest. In so holding, the Court noted the well-established general rule that a judgment establishing the debt was required before a Court can interfere with a debtor's use of his property. 528 U.S. at 319, *et seq.* This general principle has been followed in this circuit. *See Rosen v. Cascade Int'l, Inc.,* 21 F. 3d 1520, 1530 (11th Cir. 1994) ("preliminary injunctive relief freezing a defendant's assets in order to establish a fund with which to satisfy a potential judgment for money damages is simply not an appropriate exercise of a federal district court's authority"- securities case); *Mitsubishi International v. Cardinal Textile Sales,* 14 F.3d 1507, 1521 (11th Cir. 1994) ("a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment" - fraudulent inducement case). *But see Levi Strauss & Co. v. Sunrise Intern. Trading, Inc.,* 51 F. 3d 982, 987 (11th Cir. 1995) (applying the Lanham Act, distinguishing the above when a party seeks

equitable relief such as an injunction, reasoning that a district court may exercise its full range of equitable powers in order "to ensure that permanent equitable relief will be possible.")

Applied here, the only equitable relief sought in the Complaint is that of an accounting. Enjoining Defendants from paying any bonuses to any employee does not serve to "ensure that permanent equitable relief [*i.e.,* an accounting] will be possible." Indeed, the accounting sought is merely a means to an end – the ascertainment of the precise amount of money damages alleged to be owed. Viewed thus, it is clear that the relief sought in this case is monetary, and unless Plaintiff establishes a connection to a particular asset, it is inappropriate for the Court to interfere with Defendant's business operations in order to preserve a fund in which to satisfy any potential judgment.[1]

ERISA, of course, is a unique statute, and the Act does provide that the Court can grant equitable relief as it may deem appropriate, in connection with an enforcement action such as this. 29 U.S.C. § 1132(g)(2)(E). However, even if we assume that the equitable nature of ERISA might take it out of the general analysis stated above,[2] Plaintiffs still have not established entitlement to preliminary and extraordinary relief under the traditional analysis.

**Likelihood of Prevailing**

A review of the motion, memoranda and supporting documents does not establish a substantial likelihood that Plaintiff will ultimately prevail. The Court notes initially that the instant motion is not

---

[1]The Court stresses that here, unlike many of the cases cited by Plaintiffs in their papers, Plaintiffs did not state a claim for injunctive relief, constructive trust or the like in the Complaint. Nor do Plaintiffs trace their claim to a particular identifiable asset.

[2]Such an argument is at odds with the Supreme Court's observation in *Grupo Mexicano*: "The preliminary relief available in a suit seeking equitable relief has nothing to do with the preliminary relief available in a creditor's bill seeking equitable assistance in the collection of a legal debt." 528 U.S. at 325.

an appropriate substitute for trial on the merits, or a motion for summary judgment, following discovery and development of the factual record. This is especially clear, considering the evidence submitted.

First, the Court notes that the nature of the relief sought is not "preliminary" in nature, but is an expedited effort to gain more relief than is pled in the Complaint. In order to support such extraordinary relief, the Court would expect a detailed showing as to Plaintiff's entitlement to relief and the extent of the claim. Instead, Plaintiff presents the Affidavit of Brett Mirsky (Doc. No. 31), in which he avers that Defendant employed covered employees during the time period of January 2005-June 2005; that Plaintiffs sent a letter to Defendant demanding payment of its delinquent contributions for the period of January to June 2005; and that "upon information and belief" Defendant has failed to make contributions for this time period. Mirsky avers that "upon information and belief" the contributions (the amount of which are never specified or particularly identified) are late. Moreover, the letter referenced by Mirsky is included in the documents submitted (Doc. No. 32-2) and notes, in pertinent part:

> We also discussed your client's delinquency in remitting fringe benefit contributions for the time period of January-June 2005. We agreed that your client must owe *some amount of money for that time period*. I indicated to you that if the monies for this time period are not received in full, in our office by December 22, 2005, we will file a preliminary injunction. [emphasis added]

Plaintiffs' counsel, Thomas L. Johnson, has filed a declaration in which he states that on May 19, 2005, he advised the Defendant that Plaintiffs believed the amount of delinquency to be approximately $1.46 million for the time period of October 2001-December 2005 (Doc. No. 32). Of course, Plaintiffs are not seeking delinquent contributions from October 2001 through December

2005[3] here, and Plaintiffs fail to identify which part of that $1.46 million it "believes" to be outstanding over a four year period refers to "the time period at issue" – January - June 2005.[4] In short, the Affidavits establish, at best, that certain officials of the Plans *believed* but were not certain that *some amount of money* for a specified time period only, and apparently not affecting current contributions, was delinquent. On such a paltry showing, the Court finds little likelihood of success, let alone a substantial likelihood, has been shown.

**Irreparable Damage**

Plaintiffs fail to convince this Court that irreparable damage will result if expedited relief is not granted. According to the Plaintiffs, "for the time period of January 2005 - June 2005, Defendants owe Plaintiffs an unknown amount in delinquent contributions and dues. . ." (Doc. No. 30 at 6). Plaintiffs assert that absent injunctive relief, "Defendant's employees have no coverage for health benefits under the Plaintiff Health and Welfare Fund for the time period in question, and this amount will increase and place a further strain on the ability of Plaintiff Funds to provide benefits . . . thereby causing irreparable harm." *Id.* The Court does not follow this reasoning.

First, the Court finds no evidentiary support for the conclusion that employees have no health coverage for the time period in question. No affidavits are offered indicating that any employee has gone without health coverage during this time, and the Affidavit of Brett Mirsky filed by Plaintiffs notes, "Plaintiff Funds are required by law to provide benefits to Fund participants working for

---

[3] And the Court notes that the conversation took place in May 2005, but addressed delinquencies through December 2005, well into the future.

[4] Although Plaintiffs supply many payroll ledgers and other documents, they fail to identify the significance of these records, or argue how they advance or prove their case. Tables of raw numbers, without explanation or analysis, are useless to the Court.

Defendant . . . irrespective of the receipt of these delinquent contributions." (Doc. No. 31).[5] Further, given that the failure to remit contributions is limited to a finite period of time, it is not, as averred, a "mounting delinquency," that "will increase." Rather, the scant evidence before the Court indicates that if there is an amount due, it can be readily ascertained and calculated and the Funds can be made whole with the payment of any such delinquency, with interest. Any harm evident here has not been shown to be "irreparable." *See Boivin v. US Airways, Inc.,* 297 F. Supp. 2d 110, 118-119 (D.D.C. 2003) (holding that injuries such as forced sale of a house, a boat or stock, or losses due to market declines and stoppage of paying health insurance premiums do not rise to the level of irreparable harm necessary to warrant the extraordinary remedy of a preliminary injunction).

### Harm to Defendant

Likewise, there is an insufficient showing that the threat to the movant outweighs the harm to Defendant. Given that Plaintiffs have offered no estimates for the amount of unpaid contributions allegedly due for this time period, the Court cannot assess the scope of the threatened injury. Moreover, absent any evidence (other than "upon information and belief" assertions) regarding the financial status of Defendant, the Court cannot weigh the harm to Defendant. As it is Plaintiffs' burden to establish entitlement to a preliminary injunction, this factor weighs in favor of declining the relief.

### Public Policy

There is no dispute that public policy is strongly in favor of assuring the stability of pension plans through adequate funding. That, however, is not the issue here. Rather, the issue is whether

---

[5] As the Affidavits do not address the issue of health coverage at all, it is uncertain whether this statement is meant to include health coverage as a "benefit."

public policy is served by bypassing the traditional route of discovery and trial in favor of granting relief first, and requiring proof later. Considering that Defendant disputes the debt and the evidence presented as to the scope of the debt is paltry, at best, the Court sees no basis in public policy for shortchanging Defendant's due process rights to a trial or appropriate disposition (by dispositive motion) in favor of what is, in essence, a pre-judgment writ of attachment designed to secure a fund for payment of any future judgment. If, indeed, Plaintiffs believe they are ready to prove their case, a more appropriate procedure would be to move for summary judgment or to abbreviate the discovery and motions deadlines and advance the trial date.

For the foregoing reasons, it is **respectfully recommended** that the motion be **DENIED.**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on January 31, 2006.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy